Mr. Raynor. Good afternoon sir. Good afternoon. My name is Earl Raynor and I represent the appellate Michael Davis in his action against Wells Fargo, an insurance company. As you all are aware, we didn't get the first base. The action against Wells Fargo was dismissed for failure to do the claim because it was brought by race to the collar and the court also determined that we did not have authority standing to sue Assurance. Obviously, we contest both holdings. Now, I just want to ask you a practical question at the outset. We don't have a reply brief here, right? Yes, sir. Does that mean that you're not contesting the arguments that are made in the answering brief? No, it does not. And I filed a reply brief, I should have, but I am contesting and I want to address the authority standing if I could. Okay. Well then, let's go ahead and go to the question, the standing question in the first instance. Thank you, your honor. The court held that Mr. Davis did not have standing to sue Assurance because in fact ASIC was the actual insurer. However, it is clear that ASIC was in fact the alter ego of Assurance. Clearly, and we presented ample evidence to establish that Assurance managed the day-to-day business affairs of ASIC. It was clear by the 10K files with the SEC. It was also clear by emails from Assurance claims adjusters. Not ASIC, but Assurance claims adjusters who informed Mr. Davis that they had already paid $317 or paid for the repair of this roof leak. Okay. Mr. Raynor, do you have to meet them on the factual field for this? One of the things that I was wondering about is, is this correctly cast as a standing argument to begin with? If this were approached as a 12B6 motion as opposed to a 12B1 motion and subject matter jurisdiction were not implicated, would your opponent be able to bring in factual matters and ask the court to find facts? No. Not at a motion to dismiss level. Alright. Is there something about your client's claim? The nature of the claim is that there was an insurance policy and they were entitled to get some recovery on the policy. That's one of the claims, right? Yes, that's correct. And that in fact, Assurance, since this was a phony kickback scheme, a sham fourth place lending insurance policy, which was evidenced by the fact that even though Assurance and Wells Fargo were aware that there was a leaky roof inside the property, Assurance sent Wells Fargo to check for $300. Wells Fargo didn't do anything and the property was condemned. It was condemned by the city of Philadelphia. The wall falls down and they make you repair it. Oh yeah, we're familiar with the facts. Right, right, right. What if we were to accept their argument that it should be a 12B1 case? We have something in the record, in fact, a letter from your client that's written not to Assurance but to American Security Insurance Company. If it looks like from the exhibits that they put in and that even come from your client that ASIC is the party in interest here, if we thought that we were doing fact finding under 12B1, why, you know, with the burden on you to establish jurisdiction, why wouldn't that make it hard for you to do that? Well, because ASIC is a legal fiction. Assurance is the insurer. I mean, they're the ones who are paying the claim. All the correspondence is from Assurance specialty. There's no correspondence from ASIC. There's no correspondence from your client to ASIC. Evidently your client thought ASIC was the party to deal with because you wrote to them, right? Yes. Okay. So if we were actually doing fact review here because the district court correctly approached this as a 12B1, if that were the world we were in, could we say it was clearly erroneous for the district court judge to look at those facts and say, hmm, Assurance is not the insurer here, ASIC is the insurer, and that's the correct factual conclusion. That would be clearly erroneous? Yes. How so? Well, it's not clearly erroneous from the standpoint that, yes, Mr. Davis wrote ASIC, that's correct. He did write them, and then he filed his complaint against Assurance. That's true. That's what he did. I can't contest that. However, Assurance is intimately involved in the management of the day-to-day operations of ASIC. I don't see what the difference is in sending it to ASIC or Assurance. He's outstanding to sue both, frankly, because both are involved. Well, you have a subsidiary, isn't it? They were making a factual attack on the jurisdiction in this case. They were saying factually understanding the facts were this, and they could make a facial attack or a factual attack. Once they made a factual attack, I think you have to come forward, don't you, with evidence? Because you have to establish jurisdiction. Yes. You're bringing this to. Yes. We need to come forward with evidence. We submitted the 10K filings to the SEC. The court said they couldn't consider it because it was not attached to an amended complaint, but that's not the law. The law is clear that matters of public record can be considered by a court in a motion to dismiss. Clearly, 10K files to the SEC are matters of public record. For the court to conclude that it couldn't even look at that to establish the relationship between ASIC and Assurance is, frankly, bizarre. Why do we have to put that in an amended complaint when it's matters of public record? Okay. If I could just shift gears for a moment and ask about the claims against Wells Fargo. I would like you to respond to something that the district court said, Mr. Raynor. Yes. The court said on page 6 of the slip of opinion that, quote, Davis filed an amended complaint in the prior action on December 7th, 2012. According to his own statements, Davis knew all of the facts necessary to assert the, quote, new claims, unquote, against Wells Fargo at the very latest over a month before he filed that amended complaint, close quote. So looking at the timeline, the district court says that Mr. Davis effectively acknowledges that the operative facts were available to him before he filed the amended complaint in the last case. What is, if anything, an error in that assessment by the district court of the timing and of the operative facts? The court didn't read our complaint. I mean, we clearly, uh, laid out a complaint that 7 to 1 1⁄2 months later in June, the property was condemned because the wall collapses. How could Mr. Davis know October 28th, 2012, that the wall is going to collapse in June of 2013? And how would he know that Wells Fargo would negligently, would supervise a repair of the wall, not even deal with the roof, we saw again massive mold infestations. All the facts were not available at the time the amended complaint was filed, October 28th, 2012. The court conveniently omits June 11th, 2013. Well, not precisely. The court in footnote two of the opinion expressly addresses that June 2013 event by saying the factual allegations in the amended complaint make clear that Davis's negligence claim is based on Wells Fargo's failure to repair the roof leak in October 2011. In other words, the court seems to be saying that your client could have asserted the claim in the prior action because the harm, the seed of the harm, reaches to 2011. There may have been a later event that's associated with the harm, but the harm itself was the failure to repair the roof leak back in 2011. No, that's not the harm itself. They also failed to adequately repair the wall in 2013. They failed to repair that property in 2013. The mold infestation on the property, which is rendered virtually worthless, flows from June 11th, 2013. That's well after 2011 or  Well, work with me here, Purchase. Court conveniently... Work with me here on the logic. I understand the district court's logic to be the 2013 June 2013 wall collapse. That's true. That comes later. But that's not some different injury. It's a later effect of the earlier harm, what is the actual injury that your client's complaining of, which is they never fixed the roof. If they had properly addressed the problem with the property in 2011, there wouldn't have been the mold, there wouldn't have been the roof collapse, there wouldn't have been all of these cascading effects. All of those cascade from the failure in 2011 to make the repair. That's how I understand the district court addressed it. I'm trying to get you to meet that head on and explain why the district court would be wrong in understanding or in saying that this is really not a new cause of action. It is a complaint about later effects from a cause of action that should have been brought earlier. Because as the complaint notes, the wall was negligently repaired. They went inside the property and did not repair the roof. And the property today is uninhabitable. So they screwed up on the 13th. We missed that in the complaint. It's alleged and the court put it in a footnote. The court should have addressed it in its opinion. And the fact that it omits it, we feel was patently unfair because we allege the facts. It happened and this happened. We filed a complaint December 11, 2014, subsequent to that. And our complaint incorporated completely what happened on 2013. It was additional activity, actions on the part of Wells Fargo. And we feel that this is separate from the pre-existing evidence. Okay. I don't have anything else. All right. Thanks very much, Mr. Raines. I reserve two minutes for rebuttal. Sure. We'll have you back on rebuttal. Ms. Scrivani? Yes. Good afternoon. May I please the court? Stacey Scrivani from the law firm of Stevens and Lee on behalf of Wells Fargo. And to respond to the court's last questions to Mr. Rainer, there's actually more in the amended complaint from Mr. Davis himself that demonstrates that the filing by Philadelphia of an action in 2013 directly relates back to events from 2011, which is the August 22, 2012, violation notice from the city of Philadelphia to Mr. Davis that identifies as the violation the partially collapsed wall. So the filing of the suit in 13 is as a result of the violation from 11, which was known at the time the first complaint was filed. I've got to ask you about the timing here. Sure. The timing of events just struck me as pretty weird. And the district court runs through it at the beginning of the factual and background section. But it looks like the very first step your client took was to lock Mr. Davis out of the property on January 5, 2008. That's the allegation, yes. Yeah. And that only after that commenced foreclosure proceedings later in the month and then only got the mortgage and note assigned to your client in February and then oddly gets the mortgage assigned to it again three years later in October 2011. Can you explain to me how a sequence of events like that gave your client the right to bar Lieutenant Colonel Davis from his property? Well, I think that those claims were already raised in the initial action. But the issue here is these filings of assignments are notices to the public that an assignment has occurred. They are not necessarily, doesn't necessarily mean that's when the actual assignment occurs. So in this case, Wells Fargo had been the servicer on this loan for years. So you're the servicer. How does that give you the right to go and lock somebody out of their property if the allegations of the complaint, which we are accepting is true for purposes of this motion, are that you didn't get the assignment until February 8, 2008 and then I still don't understand why if you had the assignment you thought you needed an assignment again three years later. How does that give somebody a right to lock a person out of their house two months before that? Well, as the servicer, Wells Fargo has the contractual right to require that the terms of the mortgage are complied with. And the mortgage here, which is attached to the amended complaint, expressly provides that the mortgagee, and in this case the servicer, has the right to protect the property in ways that include changing the locks. I couldn't understand something here. The assignment was made by some company, I forgot the name of it, and why did they have the right to make the assignment because they weren't the original mortgagee? Well, the company I think you're referring to is MERS, which is an entity that is designed to prevent this problem with assignments. It is a company that sort of locks the mortgages in and holds them and then the assignments take place through them. Well, there has to be an assignment to them then and then they reassign it. I mean, I don't understand it. I know there's been a lot of publicity about this going on. It's like a side recording system outside the public system. Well, I think, though, that this issue is not properly for this Court's consideration for two reasons. First of all, mortgagors, the case law in Pennsylvania is quite clear, do not have the right to challenge an assignment. They are not privy to that contract. The contract exists between the ASIC-ME and the ASIC-NOR, and so mortgagors don't have the right to challenge the assignment. Do they have the right to know about it before somebody comes and changes the mortgage in their house? Well, and in this case, I think what we don't know enough about is whether this mortgagor knew that Wells Fargo was his servicer. See, whether there was an assignment of ownership, if the servicing of Wells Fargo is consistent, they are the face. They are the ones that the mortgagor deals with. That's where they pay their mortgage bill. That's who they get notice of defaults from. So that fact isn't in this amended complaint. And the other issue here is that with respect to the issues he challenges about the assignments, the dates of the assignments that he's challenging all predate the 2012 action. They are facts that existed of public record that he could have known and could have pled at that time and did not. People wouldn't ordinarily, a public record gives notice to the world. If you buy a property, you record a deed, and there's no other liens, and you have the property, and the whole world knows that you own the property. But it doesn't give the whole world actual notice. Well, we know he knew because he sued us in 2012. He sued U.S. Bank. I had a question here, and I've been waiting for months to ask this question. How in the world can you get fixed in a house for 317 bucks? I can't answer that, Your Honor. When I looked at that, I thought, I want to find out who they're using here. I could use this person. I mean, it's like a joke, almost $317. It didn't make any sense. Well, as I understand what's attached to the amended complaint, that was in reference to harm to the roof. And the trial court found that it was the roof leaking that leads to the other problems, including the potential for the wall to collapse. The roof that allegedly your client, after making the claim and receiving the money, failed to repair. And again, as we know in our motion to dismiss, and the lower court did not reach this issue, the mortgage agreement expressly permits the mortgagee to get insurance if the homeowner didn't, which is the case here, settle claims with respect to damage. And it has the option to either fix the property or put the money from that insurance settlement towards the arrearages, which is clearly the case here. So you have at your option the right to take the insurance that you forced, accept the money for the repair, knowing it's a leak and a problem that could have structural ramifications, pocket the money, let the property deteriorate, and then leave it as the problem for the homeowner. That's Wells Fargo's view of the world? That is what the mortgage gives them the right to do. Yeah. But does that strike you as something that ought to raise a concern about good faith and fair dealing or maybe evidence of the kind of collusion that the plaintiff is talking about, that you claim there's a roof problem that could be fixed for $300 and then do nothing and pocket the money? I think, Your Honor, we can't make that determination when we don't have any idea what the other condition of the property is or what the value of that property is. The complaint that we have to accept is true. It doesn't paint Wells Fargo in a very flattering light, does it? There's no question it does not, Your Honor. Okay. What is forced? I never heard that expression. I've been a lawyer since August of 1958, and I never heard the term before forced placed insurance. I never saw it before. What does that mean? It means that there are certain types of insurances, homeowner's insurance being the one at issue here, that the mortgage requires the mortgagor to have. And if the mortgagor refuses to go out on the market and get it themselves, then the mortgage company has the right to insure the property by going to an insurance company and forcing placement on the policy. That happens with respect to flood insurance. But in this case, it's homeowner's, and that's the most common example. All right. Thanks very much, Ms. Scrivani. Thank you. We'll hear from Mr. Miranda-Dedrick on behalf of Assurant. May it please the Court. Good afternoon, Your Honors. Matthew Miranda-Dedrick here with me today is my colleague, Alex Nasser. We're here today on behalf of Assurant Incorporated. Your Honors, there's one issue before this panel on appeal as to Assurant. Did the district court correctly determine that Assurant was not the insurer of the property? Well, actually, that's not entirely accurate. The one issue before us is whether it was correct to dismiss this on a jurisdictional basis for standing purposes. That's what I understand the issue to be. And my question to you is, since the Supreme Court of the United States has told us that standing is a question of whether this particular plaintiff has the right or entitlement to bring the particular kind of claim being brought, if that's the focus that standing analysis under 12b-1 is meant to take, how is it that the homeowner is not the particular person who has the right to bring the particular kind of claim that's at issue here? Well, Your Honor, 12b-1 motions for lack of standing come in two different flavors. They come in either a facial attack or a factual attack. I fully understand that. I'm just trying to understand why this wasn't a plain old 12b-6 and shouldn't have been dealt with that way. Well, and the reason for that, Your Honor, is because 12b-1, especially a facial attack, serves a very important purpose under the federal rules, and that is that a plaintiff, you're correct, Your Honor, has to be the right plaintiff, has to have the right type of claims, but for standing, causation, and redressability, has to actually sue the right party. And that's what a 12b-1 facial attack is. If you sue the wrong party, I must tell you this. I wrote it so I can't complain about it. In the case of 1 v. Lower Merion, it says the plaintiff must show, for Article III standing, two, a causal connection between the injury and the conduct complained of, meaning that the injury must be fairly traceable to the challenge action of the defendant. What you're saying is that there's no standing because the action of the defendant isn't what caused the loss here. It was the subsidiary. That is precisely what I'm saying. And how do you define that in terms of standing? That is precisely what I'm saying. In fact, that's also what this Court has said when applying a clearly erroneous standard to a review of a case in the case of CNA v. United States. It's a 2008 opinion. Why wouldn't that view of 12b-1 just swamp 12b-6? I mean, 12b-6 is what we look at when we ask, did somebody get the merits of this right or not? Including, have they got the right person on the hook? What you're saying is you don't have a claim against us because we're just not a party to any contract. We weren't part of this. We're not related to that. That is, it's puzzling to me to hear that couched in terms of standing as if this was a jurisdictional problem. Are you suggesting that the Court doesn't have subject matter jurisdiction to consider the kind of claim that's at issue here? No, Your Honor. What we are saying is that the Court does not have subject matter, did not have subject matter jurisdiction to consider the type of claim against this particular defendant. And that's exactly what a 12b-1 factual attack is meant to address. There's an entire body of case law. A 12b-1 factual attack is meant to address things like there's, yeah, you say you've made a federal claim against me, but you don't have, you can't really establish that you have standing to sue because you don't meet certain of these standing criteria set out in Lujan or something like that. In the Pennsylvania electoral case that we recently handled, we made careful distinctions between facial and factual attacks, but we didn't get into the merits of the case. We didn't delve into the merits and say, well, you've got the wrong party. It's jurisdictional. I'm struggling with this because it's odd for me to see a district court throw its hands up and say, I'm without jurisdiction here, instead of just saying, well, it looks like you've got the wrong party. I'm dismissing under 12b-6. Get the right party in here. Well, the district court, to answer Your Honor's question, Your Honor's concern there, first of all, we maintain that the district court got it right and applied the law correctly, but sort of setting aside whether or not the plaintiff had to meet elevated standards, which we think he had to do, setting aside whether or not the district court's finding. Why did he have to meet elevated standards? Under a 12b-1 factual attack, Your Honor. Precisely. So what you're saying is if you get the wrong party on the hook, we can come in and assert 12b-1, and you're no longer under ordinary standards to say there's a merits problem here. You're now in a fact-finding circumstance with a heightened pleading requirement upon you. What I would say, Your Honor, to that is that even if the court had considered it under a 12b-6 scenario, it would have arrived at the same result, which is exactly what all of the other district courts who have considered this precise issue, Assurance v. ASIC, whether under a 12b-1 or a 12b-6, have gotten to that exact same conclusion. But we don't know that here because the district court didn't look at it under 12b-6 and didn't take the 12b-6 lens to it and didn't give the benefit of every inference in favor of the plaintiff, instead did fact-finding, right? The district court did do fact-finding here, Your Honor. That is correct, and our position is that that was appropriate under the law. But the district court did not do that in a vacuum, and the other district court opinions that it referenced are informative on that, and gave the plaintiffs in those cases the benefit of the doubt, same types of evidence that the plaintiff came forward with here, the SEC public filings, these unfounded allegations, and said that all of those taken together, even giving the plaintiff the benefit of the doubt, do not rise to the level of an actionable claim. Let me ask you this. You've got in your answering brief the statement that ASIC is an indirect subsidiary of Assurant. You say Assurant is not an insurance company, does not issue insurance policies, does not insure a palace property, does not contract with mortgage lenders or services, et cetera. This is all on page 8 of your answering brief under the summary of argument. And my question to you is, how do we know all those things? Because you say so in a declaration, right? Well, you know all those things through the declaration, and also through the court had the benefit of other courts that have done the exact type of fact-finding that your Honor is describing on the site that Cochran made versus Wells Fargo incision, Southern District of Texas, 2014, that did the exact type of jurisdictional discovery. Okay. And I'll see your Southern District of Texas and give you a Southern District of New York, Curtis versus Semar FSB, which says, while standing and merits questions frequently overlap, standing is fundamentally about the propriety of the individual litigating a claim irrespective of its legal merits. In other words, it's just wrong to look at it at 12B1. You've got to look at it at 12B6. How come Curtis isn't more persuasive than the case you're citing? Well, it's for the very direct reason that the appellants here have not raised that as an issue on appeal. And this Court has been, the only issue that the appellants raised on appeal is did they sue the correct party. We have the responsibility to decide jurisdictional, subject matter jurisdiction issues, right? You went in and prevailed on a statement that there's no subject matter jurisdiction. Do we not have a responsibility, independent of what the parties say, to ascertain jurisdiction? Well, then if that's the case, Your Honor. Don't say if that's the case. I'm just asking as a matter of law, don't we? Yes, but if you reach that result, then you also have to reach the result that a 12B1 factual attack is the standard to apply here. In other words, it would be, why wouldn't it be just as logical and appropriate for us to say we have a responsibility to see whether you declined jurisdiction properly, you didn't decline it properly, because this was a 12B6 situation, not a 12B1 situation? What would force us into doing the factual analysis? And my answer to that is this Court would not be forced to do the factual analysis, even under a more relaxed 12B6 standard. Our contention would be that the allegations made in the complaint and our arguments thereto are sufficient to have the matter dismissed for lack of jurisdiction. The Court certainly was wrong on one thing, though. Because the Court said that the plaintiff here didn't have standing because of the redressability elements of standing, which referred back to the point that the injury has to be redressed by a favorable decision. Now, in this case, a favorable decision would redress the injury. Now, maybe it shouldn't, because maybe the wrong person sued. But if they got a judgment against assurant, that would, you know, that would redress the injury. So your argument has to be that they sued the wrong party. And as I said, this Court has squarely said that you have to be able to show that the injury was fairly traceable to the challenged action of the defendant. And I have to tell you, when I picked this case up, the same thought that went into Judge Jordan's mind went into my mind. Why is this a standing question? Because he was injured and so forth. And yet I found the language I wrote myself, quoting, you know, saying, no, if you sue the wrong defendant, there's no standing. I don't know that that's logical. Nevertheless, it happens to be the law of the circuit. It is the law of the circuit. And Your Honor's point about redressability cycles back to causation. And it has to be redressable against the defendant who's actually pleading the complaint. And there was no mystery here as to who the insurance company was. The panel here cited to Mr. Davis multiple times in which he stated it. In our motion to dismiss, we brought it forward. At any point in time, the appellant could have moved to add ASIC into the case, could have moved to amend, could have done any number of things. But instead, he decided to stand on his complaint. And there are very real consequences to that. And one of the consequences to that is that he cannot now say, well, you know, I was wrong, and you should let me have another bite at the apple. Okay. Thanks very much, Mr. Ferrandi. Is there anything else? Thank you. Thank you. Thank you very much, sir. All right. Thank you, Mr. Raynor. Thank you. Appreciate counsel's argument today. We've got the matter under advisement. We stand recess. Thank you. I, uh, thank you very much.         Thank you. Appreciate it. Thank you. Thank you. Thank you.